1 | Mario Martinez (CA SBN 200721)*
mmartinez@farmworkerlaw.com
2 | Edgar I. Aguilasocho (CA SBN 285567)*
eaguilasocho@farmworkerlaw.com
3 | Charlotte Mikat-Stevens (WA SBN 55765)
cmikatstevens@farmworkerlaw.com
4 | **MARTINEZ AGUILASOCHO & LYNCH**
A Professional Law Corporation
5 | P.O. Box 1998
Bakersfield, CA 93303
6 | Tel.: (661) 859-1174 | Fax: (661) 840-6154
info@farmworkerlaw.com

7 | *Pro Hac Vice motion forthcoming*

8 | *Counsel for Plaintiffs*

9

10 | **DISTRICT COURT OF THE UNITED STATES
EASTERN DISTRICT OF WASHINGTON**

11

12 | EZEQUIEL BALDERRAMA, JOSE NOEL CEJA, JESUS GALLEGOS, CANDELARIO HERRERA, VICTOR LICONA, JOAQUIN MENDOZA, GENARO MORENO, and JORGE RAMIREZ,

Case No.   20-cv-03069

**COMPLAINT FOR DAMAGES**

   1. **VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

   2. **VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION**

**DEMAND FOR JURY TRIAL**

Plaintiffs,

vs.

MENSONIDES DAIRY, LLC, JEAN PIERRE FLORES, and DOES 1-10,

Defendants.

13
14
15
16
17
18
19
20
21

# I.    NATURE OF THE ACTION

1.      This is a case of sexual harassment and retaliation endured by eight former and current dairy workers, Ezequiel Balderrama, Jose Noel Ceja, Jesus Gallegos, Candelario Herrera, Victor Licona, Joaquin Mendoza, Genaro Moreno, and Jorge Ramirez (hereinafter, "Plaintiffs"), in violation of Title VII of the Civil Rights Act and the Washington Law Against Discrimination.  At various times during their employment by Defendant Mensonides Dairy, LLC (hereinafter, "Mensonides Dairy"), Plaintiffs were subjected to unwelcome and offensive sexual conduct by their supervisor, Defendant Jean Pierre Flores (hereinafter, "Flores"), a management employee of the Dairy.  Though Plaintiffs complained about and protested the sexual harassment, Defendant Flores continued to sexually harass Plaintiffs.  As a result of complaining of and protesting the sexual harassment, Defendants Mensonides Dairy and Flores (hereinafter, "Defendants") subjected Plaintiffs to retaliation, including less desirable job duties and schedules, discipline, and termination of employment.  As a result of Defendants' unlawful and discriminatory employment actions, Plaintiffs have suffered monetary and psychological damages.  Plaintiffs bring this action under federal and state law to be made whole by Defendants for the harm caused by these unlawful and discriminatory employment actions and to stop Defendants from continued unlawful and discriminatory practices.

## II.    JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1337, 1343, and 42. U.S.C. § 2000e-5(f)(3).  This action is authorized and

instituted pursuant to sections 706(f)(1) and (3) of Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) (hereinafter, "Title VII"),

and section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.      This Court has supplemental jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the federal

claims under Title VII as to form part of the same case or controversy under Article

III of the United States Constitution.  This action is authorized and instituted

pursuant to the Washington Law Against Discrimination (hereinafter, "WLAD"),

RCW 49.60.030(2).

4.      The Eastern District of Washington is the proper venue for this action,

pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions

giving rise to Plaintiffs' claims occurred within the boundaries of the District, and

as all defendants are residents of the State of Washington or were at all relevant

times.

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Less than 300 days after incidents of ongoing sexual harassment and

retaliation, Plaintiffs filed individual Charges of Discrimination against Defendants

with the Equal Employment Opportunity Commission (hereinafter, "EEOC"),

1  alleging violations of Title VII by Defendants (Charge Nos. 551-2019-02777C;

2  551-2019-02899C; 551-2019-02900C; 551-2019-02902C; 551-2019-02904C; 551-

3  2019-02905C; 551-2019-02903C; 551-2019-02898C).

4  6.      On December 17, 2019, at the conclusion of its investigation of each Charge,

5  the EEOC issued a Determination as to the Charges filed by Plaintiffs, finding

6  reasonable cause to believe that violations of Title VII had occurred, including

7  sexual harassment and retaliation for having complained about the harassment.

8  7.      On February 24, 2020, the EEOC issued a Notice of Right to Sue

9  (Conciliation Failure) to each Plaintiff, advising them that its efforts to conciliate

10  their Charges had been unsuccessful, and that Plaintiffs should file a lawsuit under

11  federal law based on their Charges in federal or state court to preserve their claims.

12  8.      Plaintiffs file the present lawsuit and complaint for damages less than 90

13  days after receipt of the EEOC's Notice of Right to Sue.

14  9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

15  **IV.    PARTIES**

16  10.     At all relevant times, Plaintiff Ezequiel Balderrama was a resident of

17  Washington State.

18  11.     At all relevant times, Plaintiff Jose Noel Ceja was a resident of Washington

19  State.

20  12.     At all relevant times, Plaintiff Jesus Gallegos was a resident of Washington

21  State.

13.     At all relevant times, Plaintiff Candelario Herrera was a resident of Washington State.

14.     At all relevant times, Plaintiff Victor Licona was a resident of Washington State.

15.     At all relevant times, Plaintiff Joaquin Mendoza was a resident of Washington State.

16.     At all relevant times, Plaintiff Genaro Moreno was a resident of Washington State.

17.     At all relevant times, Plaintiff Jorge Ramirez was a resident of Washington State.

18.     At all relevant times, Defendant Mensonides Dairy LLC has been a Washington limited liability corporation continuously doing business in the State of Washington and employing at least fifteen (15) employees.

19.     Upon information and belief, Defendant Mensonides Dairy, at all relevant times, was continuously an employer engaged in an industry affecting commerce within the meaning of sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

20.     At all relevant times, Defendant Mensonides Dairy has continuously been an employer within the meaning of the WLAD, RCW 49.60.040(11) and RCW 49.60.180.

21.     The principal office of Defendant Mensonides Dairy is located at 305 S.

1   Fisher Road in Mabton, Yakima County, Washington 98935.

2   22.    At all relevant times, Defendant Jean Pierre Flores was a resident of

3   Washington State and a management employee of Defendant Mensonides Dairy.

4   23.    Defendant Jean Pierre Flores continues to be a resident of Washington State

5   and, upon information and belief, a management employee of Defendant

6   Mensonides Dairy.

7                    **V.    STATEMENT OF FACTS**

8   24.    Defendant Mensonides Dairy operates a dairy farm located at 305 S. Fisher

9   Road in Mabton, Yakima County, Washington 98935.

10  25.    Theresa and Art Mensonides are married and are co-owners of Defendant

11  Mensonides Dairy.

12  26.    Kristyn Mensonides is the daughter of Theresa and Art Mensonides.  At all

13  relevant times, she was a statutory supervisor and management employee of

14  Defendant Mensonides Dairy.  Upon information and belief, she continues to be a

15  statutory supervisor and management employee of Defendant Mensonides Dairy.

16  27.    Auke Bruinsma is married to Joreen Mensonides, another daughter of

17  Theresa and Art Mensonides, and therefore is the son-in-law of Theresa and Art

18  Mensonides.  At all relevant times, Auke Bruinsma was a statutory supervisor and

19  management employee of Defendant Mensonides Dairy, primarily responsible for

20  overseeing outdoor workers.  Upon information and belief, he continues to be a

21  statutory supervisor and management employee of Defendant Mensonides Dairy.

28.     At all relevant times, Defendant Jean Pierre Flores was a statutory supervisor and management employee of Defendant Mensonides Dairy.  He continues to be a statutory supervisor and management employee of Defendant Mensonides Dairy.

29.     Plaintiff Balderrama is married to the sister of Plaintiff Licona, and therefore these two Plaintiffs are brothers-in-law.

30.     Plaintiffs Balderrama, Ceja, Gallegos, Herrera, Licona, Mendoza, and Moreno are male Spanish-speakers who are unable to communicate or understand written or spoken English with any significant proficiency.

31.     Plaintiff Ramirez is bilingual and is able to speak, read, and write fluently in both English and Spanish.

32.     Between on or about December 10, 2017 and in or around July 2019, Defendant Flores was a statutory supervisor and management employee of Defendant Mensonides Dairy, working as General Manager or General Foreman, and upon information and belief, his responsibilities included but were not limited to:

    a.     Hiring workers or recommending workers for hire;

    b.     Firing workers or recommending workers for termination;

    c.     Recommending workers for demotions or termination;

    d.     Influencing workers' wages and ability to obtain raises;

    e.     Recommending workers for promotions or raises;

    f.     Overseeing or enforcing paperwork requirements and providing or

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

collecting documents that workers were to sign, often in his office;

g.    Occasionally handing out paychecks (a task also performed by other members of management);

h.    Sending workers home and suspending them without pay, or relaying such directives from other management;

i.    Managing and approving workers' scheduled shifts and hours;

j.    Permitting or denying workers permission to change their schedule;

k.    Permitting or denying workers permission to take Paid Time Off or unpaid time off;

l.    Assigning, recommending, or influencing job assignments given to workers;

m.    Giving workers written "warnings", a formal form of discipline;

n.    Giving verbal instructions and oversight of workers' tasks, including verbal warnings;

o.    Giving regular orientations to workers regarding health and safety, production, and procedures;

p.    Reporting and taking employees' reports of harassment or inappropriate behavior by other employees;

q.    Translating in-person communication with Spanish-speaking employees (including Plaintiffs) for non-Spanish speaking management (including Art, Theresa, and Kristyn Mensonides),

including but not limited to health and safety meetings, trainings, disciplinary meetings, and human resources meetings;

r. Performing administrative duties in his office; and

s. Personally administering drug tests to employees, including overseeing collection of urine samples.

33. Upon information and belief, beginning on or around late 2018 and continuing through on or around July 2019, Defendant Flores had Human Resources responsibilities, in addition to his role provided in paragraph 40 *supra* as General Manager or General Foreman, and his responsibilities as such included but were not limited to his responsibilities as General Manager or General Foreman provided in paragraph 40 *supra*.

34. During the period when Defendant Flores had Human Resources responsibilities, Defendant Flores bragged about this new role to workers, including Plaintiffs, and the associated extra wages he said he was receiving for working in "Human Resources."

35. Since in or around August 2019, Defendant Flores has held the position of milk shift leader for Defendant Mensonides Dairy, a position that has some supervisory authority on a particular milking shift. Upon information and belief, this demotion from General Manager and Human Resources, was a result of the Charges of Discrimination that Plaintiffs submitted to the EEOC.

36. Upon information and belief, Defendant Flores currently lives at apartments

located within the Mensonides Dairy complex in Mabton, Washington, where he has lived since in or around December 2017 around the time he was promoted to General Manager or General Foreman.

37.    Since at least on or about December 10, 2017, Defendant Flores fomented an atmosphere of sexual harassment, targeting male workers at the dairy, including Plaintiffs.

38.    Plaintiff Balderrama worked for Defendant Mensonides Dairy from in or around 2013 to in or around March 2018, and then again from in or around March 2019 through on or about July 30, 2019.

39.    Between approximately March 2019 and on or about July 30, 2019, Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected Plaintiff Balderrama to ongoing unwelcome sexual conduct at or near Mensonides Dairy in Mabton, Washington.  This unwelcome conduct included but was not limited to:

a.    Suggestively touching/caressing Plaintiff Balderrama's back in a sexually provocative manner, numerous times;

b.    Suggestively massaging Plaintiff Balderrama's shoulders and neck, in a sexually provocative manner, numerous times;

c.    Fondling, caressing, and groping Plaintiff Balderrama's legs, upper thighs, and genitalia, numerous times;

d.    Rubbing Plaintiff Balderrama's back and buttocks in a sexually

1    provocative manner, numerous times;

2        e.    Winking and blowing kisses at Plaintiff Balderrama in a sexually

3              provocative manner, numerous times;

4        f.    Making obscene gestures and simulating oral sex, numerous times;

5        g.    Making lewd and obscene comments to Plaintiff Balderrama in a

6              sexually provocative manner, numerous times;

7        h.    Using terms of endearment, such as "mijo" (sweetie/hun) and "guapo"

8              (handsome), in a sexually provocative manner, numerous times;

9        i.    Offering to waive or remove written discipline in exchange for

10            allowing Defendant Flores to perform oral sex on him; and

11        j.    Threatening retaliation and termination for resisting the sexual

12            harassment and refusing sex.

13  40.    Between in or around March 2019 and on or about July 30, 2019, Plaintiff

14  Balderrama witnessed ongoing unwelcome sexual conduct directed at other male

15  workers by Defendant Flores at or near Mensonides Dairy in Mabton, Washington.

16  This unwelcome conduct by Defendant Flores included but was not limited to:

17        a.    Touching and caressing their backs, necks, shoulders, and

18            pectorals/chest, in a sexually provocative manner, numerous times;

19        b.    Massaging their shoulders and neck, in a sexually provocative

20            manner, numerous times;

21        c.    Fondling, caressing and groping their legs, upper thighs, and genitalia

1          in a sexually provocative manner, numerous times;

2     d.     Rubbing their backs and buttocks in a sexually provocative manner,

3          numerous times;

4     e.     Making obscene gestures and simulating oral sex, numerous times;

5          and

6     f.     Offering to waive or remove written discipline in exchange for

7          allowing Defendant Flores to perform oral sex on them.

8     41.    Based upon information and belief, between in or around March 2019 and on

9     or about July 30, 2019, Defendant Mensonides Dairy, directly and through the

10    conduct of Defendant Flores, subjected Plaintiff Balderrama to retaliation. Upon

11    information and belief, the retaliation related to the aforementioned sexual

12    harassment and to Plaintiff Balderrama's filed Charges with the EEOC and his

13    participation in the EEOC investigation. The retaliation included but was not

14    limited to:

15        a.     Various incidents of unwarranted written discipline; and

16        b.     Discharge on or about July 30, 2019 based on unwarranted written

17             discipline.

18    42.    Plaintiff Ceja worked for Defendant Mensonides Dairy from in or around

19    March 2017 to in or around October 2019.

20    43.    Between on or about December 10, 2017 and on or about June 16, 2019,

21    Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected

1  Plaintiff Ceja to ongoing unwelcome sexual conduct at or near Mensonides Dairy

2  in Mabton, Washington.  This unwelcome conduct included but was not limited to:

3      a.    Suggestively touching/caressing Plaintiff Ceja's back in a sexually

4            provocative manner, numerous times;

5      b.    Suggestively massaging Plaintiff Ceja's shoulders and neck, in a

6            sexually provocative manner, numerous times;

7      c.    Fondling, caressing, and groping Plaintiff Ceja's legs and upper

8            thighs, attempting to reach his genitalia, numerous times;

9      d.    Making obscene gestures and simulating oral sex, numerous times;

10     e.    Offering better pay if Plaintiff Ceja in exchange for what Plaintiff

11           Ceja believed to be implied submission to Defendant Flores' sexual

12           advances;

13     f.    Making lewd and obscene comments in a sexually provocative

14           manner to Plaintiff Ceja and to Plaintiff Ceja's wife;

15     g.    Offering to help Plaintiff Ceja obtain sex from women if Plaintiff Ceja

16           would facilitate an intimate relationship or otherwise convince certain

17           male workers, whom Defendant Flores desired, to have sex with

18           Defendant Flores;

19     h.    Offering Plaintiff Ceja money if he would have sex with Defendant

20           Flores;

21     i.    Threatening workers generally if they complained with Defendant

COMPLAINT FOR DAMAGES                              **MARTINEZ AGUILASOCHO & LYNCH**
DEMAND FOR JURY TRIAL - 13                          P.O. Box 1998, Bakersfield, CA 93303
                                                   Tel.: (661) 859-1174 | Fax.: (661) 840-6154

Flores' power to cause their employment to be terminated, telling them "if someone doesn't like it, there's the door"; and

j.    Attempting to disrupt Plaintiff Ceja's relationship with his wife by falsely reporting to her that Plaintiff Ceja was cheating on her; upon information and belief, this was done in retaliation for Plaintiff Ceja's resistance to Defendant Flores' sexual harassment and advances.

k.    Making obscene comments comparing the size of male worker's genitalia to the size he assumed Plaintiff Ceja to have.

44.    Between on or about December 10, 2017 and on or about June 16, 2019, Plaintiff Ceja witnessed ongoing unwelcome sexual conduct by Defendant Flores directed at other male workers at or near Mensonides Dairy in Mabton, Washington.  This unwelcome conduct by Defendant Flores included but was not limited to:

a.    Fondling, caressing, and groping workers' legs, upper thighs, and genitalia, and attempting to do so, numerous times; and

b.    Coming up behind workers and suggestively touching, caressing, and grabbing them in a sexually provocative manner, numerous times.

45.    Beginning in or around July 2019, Defendant Mensonides Dairy, subjected Plaintiff Ceja to adverse work conditions.  Upon information and belief, such retaliation was related to the aforementioned sexual harassment, including Plaintiff Ceja's having filed Charges with the EEOC and his participation in the EEOC

1    investigation.  The retaliation has included but has not been limited to the

2    following incidents or patterns:

3          a.    Denying Plaintiff Ceja requested changes in schedule, which prior had

4                been routinely approved;

5          b.    Issuing Plaintiff Ceja unwarranted discipline; and

6          c.    Issuing Plaintiff Ceja a final paycheck for fewer hours paid than he

7                had actually worked during that pay period.

8          d.    Constructive discharge of Plaintiff Ceja, due to the imposition of the

9                aforementioned adverse conditions.

10    46.    Plaintiff Gallegos worked for Defendant Mensonides Dairy from in or

11    around September 2016 to in or around February 2019.

12    47.    Betweeen on or about December 10, 2017 and on or about February 6, 2019,

13    Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected

14    Plaintiff Gallegos to ongoing unwelcome sexual conduct at or near Mensonides

15    Dairy in Mabton, Washington.  This unwelcome conduct included but was not

16    limited to:

17          a.    Making sexualized comments to Plaintiff Gallegos about his body,

18                including comments and compliments regarding Plaintiff Gallegos'

19                genitalia;

20          b.    Touching Plaintiff Gallegos' back, neck, shoulders, buttocks, and

21                pectorals/chest, and then, saying it was accidental;

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL - 15

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

c.    Forcibly grabbing and fondling Plaintiff Gallegos' penis and genitalia;

d.    Fondling, caressing, and groping Plaintiff Gallegos' legs, upper thighs, and genitalia in a sexually provocative manner;

e.    Using sexually provocative and flirtatious behavior with Plaintiff Gallegos, including using unwanted and sexually charged terms of endearment and tones of voice; and

f.    Making lewd and sexually provocative comments to Plaintiff Gallegos about Plaintiff Gallegos and about other male workers, including sexual topics and innuendo during conversations at work.

48.    Between on or about December 10, 2017 and on or about February 6, 2019, Plaintiff Gallegos witnessed ongoing unwelcome sexual conduct by Defendant Flores directed at other male workers at or near Mensonides Dairy in Mabton, Washington.  This unwelcome conduct by Defendant Flores included but was not limited to:

a.    Touching and caressing their backs, necks, shoulders, and pectorals/chest in a sexually provocative manner, numerous times;

b.    Massaging their shoulders and necks in a sexually provocative manner, numerous times;

c.    Fondling, caressing, and groping their legs, upper thighs, and genitalia in a sexually provocative manner, numerous times;

d.    Rubbing their backs and buttocks in a sexually provocative manner,

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

1    numerous times;

2        e.    Forcibly grabbing and fondling the penis and testicles of certain other

3              workers, while making sexually provocative comments, for example,

4              about the size of their genitalia;

5        f.    Creating negative work consequences for workers who resisted

6              Defendant Flores' sexual harassment, including reduced hours, written

7              discipline, and a lack of raises; and

8        g.    Making comments that Defendant Flores had and would create legal

9              problems for workers that Defendant Flores considered to be

10             ungrateful or who resisted his sexual advances.

11   49.    During his employment by Defendant Mensonides Dairy, Plaintiff Gallegos

12   requested that management move him to a different work area, so that he could

13   work away from Defendant Flores and not have any further contact with Defendant

14   Flores.  He was moved to any area with less, but still some, direct contact with

15   Defendant Flores. On or around February 6, 2019, Plaintiff Gallegos suffered

16   constructive discharge by Defendants, when to escape the sexual harassment by

17   Defendant Flores, he was forced to quit.

18   50.    Plaintiff Herrera has worked for Defendant Mensonides Dairy since in or

19   around June 2004, and he remains a current employee.

20   51.    Between on or about December 10, 2017 and on or about June 16, 2019,

21   Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL - 17

**MARTINEZ AGUILASOCHO & LYNCH**
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

1   Plaintiff Herrera to ongoing unwelcome sexual conduct at or near Mensonides

2   Dairy in Mabton, Washington.  This unwelcome conduct included but was not

3   limited to:

4        a.    Making threats directed at Plaintiff Herrera's privacy and reputation to

5              extort Plaintiff Herrera into an intimate relationship;

6        b.    Making threats to reduce Plaintiff Herrera's wages if he would not

7              engage in an intimate relationship with Defendant Flores;

8        c.    Offering to waive or remove written discipline for Plaintiff Herrera in

9              exchange for allowing Defendant Flores to perform oral sex on him;

10       d.    Extorting and/or attempting extortion of non-consensual oral sex on

11             Plaintiff Herrera, including but not limited to falsely indicating that

12             Plaintiff Herrera had failed a drug test and offering to hide the results

13             and redo the test if Plaintiff Herrera would allow Defendant Flores to

14             perform oral sex on him;

15       e.    Engaging in unwanted and nonconsensual sexual contact with Plaintiff

16             Herrera, including sexual assault, battery, grabbing, and fondling of

17             Plaintiff Herrera's penis and genitalia;

18       f.    Engaging in sexual assault on Plaintiff Herrera, including by forcible

19             and/or non-consensual oral sex;

20       g.    Engaging in sexual battery on Plaintiff Herrera, including by forcibly

21             grabbing Plaintiff Herrera's penis during a drug urine test;

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL - 18

**MARTINEZ AGUILASOCHO & LYNCH**
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

1      h.     Engaging in unwanted sexual touching on Plaintiff Herrera, including

2              sitting beside Plaintiff Herrera, hugging him, and putting his hand

3              down Plaintiff Herrera's button-down shirt to caress his

4              chest/pectorals and pull on his chest hair, in a sexually provocative

5              manner, numerous times;

6      i.      Fondling and groping, and attempting to fondle and grope, Plaintiff

7              Herrera's legs, upper thighs, and genitals while seated beside him, in a

8              sexually provocative manner, numerous times;

9      j.      Grabbing Plaintiff Herrera by the belt buckle in a sexually provocative

10           manner, numerous times;

11     k.     Making sexually provocative and flirtatious comments to Plaintiff

12           Herrera, including expressions of Defendant Flores' sexual interest in

13           Plaintiff Herrera;

14     l.      Coming up behind Plaintiff Herrera and hugging or placing his arms

15           around Plaintiff Herrera's body in a sexually provocative manner,

16           numerous times;

17     m.    Suggestively massaging Plaintiff Herrera's shoulders from behind in a

18           sexually provocative manner, numerous times;

19     n.     Offering Plaintiff Herrera employment benefits in exchange for sex;

20     o.     Making lewd and sexually-charged comments about other male

21           workers to Plaintiff Herrera, numerous times;

p.    Making lewd and sexually-charged comments about Plaintiff Herrera's son, a youth in his late teens/early twenties, to Plaintiff Herrera;

q.    Commenting to Plaintiff Herrera that he had and would "get (workers) into problems" or get them fired if they complained about Defendant Flores' sexual harassment;

r.    Engaging in intimidation by claiming to Plaintiff Herrera Defendant Mensonides Dairy was "on his side" and would never fire him; and

s.    Commenting to Plaintiff Herrera, in 2018, that he had created and would create legal problems for workers that Defendant Flores considered "malagradecidos" or ungrateful.

52.    Between on or about December 10, 2017 and on or about June 16, 2019, Plaintiff Herrera witnessed ongoing unwelcome sexual conduct directed at other male workers by Defendant Flores at or near Mensonides Dairy in Mabton, Washington.  This unwelcome conduct included but was not limited to:

a.    Suggestively touching and caressing their backs, necks, shoulders, and pectorals/chest in a sexually provocative manner, numerous times;

b.    Suggestively massaging their shoulders and neck in a sexually provocative manner, numerous times;

c.    Making obscene gestures and simulating oral sex, numerous times; and

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

1       d.     Offering to remove written discipline in exchange for sex.

2  53.    Since in or around July or August 2019, Defendant Mensonides Dairy has

3 subjected Plaintiff Herrera to adverse work conditions.  Upon information and

4 belief, such retaliation is related to the aforementioned sexual harassment,

5 including Plaintiff Herrera having files Charges with the EEOC and his

6 participation in the EEOC and Yakima County Sheriff investigation.  The

7 retaliation has included but has not been limited to the following incidents or

8 patterns:

9       a.     Denying Plaintiff Herrera personal days or requested changes in

10            schedule, which prior had been routinely approved;

11       b.     Assignment of a less favorable schedule than before;

12       c.     Issuing unwarranted written discipline;

13       d.     Denying him statutorily required meal and rest periods; and

14       e.     Creating new and additional administrative hurdles when Plaintiff

15            Herrera has needed time off, including requiring proof of the

16            justification for his request.

17  54.    Plaintiff Licona worked for Defendant Mensonides Dairy from in or around

18 2013 through on or about August 8, 2019.

19  55.    Between on or about December 10, 2017 and on or about June 16, 2019,

20 Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected

21 Plaintiff Licona to ongoing unwelcome sexual conduct at or near Mensonides

Dairy in Mabton, Washington.  This unwelcome conduct included but was not limited to:

      a.     Touching/caressing Plaintiff Licona's back in a sexually provocative manner, numerous times;

      b.     Massaging Plaintiff Licona's shoulders and neck in a sexually provocative manner, numerous times;

      c.     Non-consensual hugging Plaintiff Licona in a sexually provocative manner numerous times;

      d.     Fondling, caressing, and groping Plaintiff Licona's pectorals/chest, reaching down his shirt, and touching his chest hair in a sexually provocative manner, numerous times;

      e.     Rubbing Plaintiff Licona's back and buttocks in a sexually provocative manner, numerous times;

      f.     Fondling, caressing, and groping Plaintiff Licona's legs, upper thighs, and genitalia in a sexually provocative manner, numerous times, especially when alone and secluded from others;

      g.     Making unwanted offers of sex to Plaintiff Licona, including offering raises and benefits if Plaintiff Licona would engage in an intimate relationship with or allow Defendant Flores to perform oral sex on him;

      h.     Offering to waive or remove written discipline for Plaintiff Licona in

1    exchange for allowing Defendant Flores to perform oral sex on him;

2    i.    Demanding sexual favors from Plaintiff Licona as repayment for

3    employment-related favors Defendant Flores claimed he had done for

4    Plaintiff Licona;

5    j.    Making obscene gestures and simulating oral sex;

6    k.    Calling Plaintiff Licona by sexually charged terms of endearment,

7    such as "papi" (daddy), in a sexually provocative manner, numerous

8    times;

9    l.    Making sexually provocative and flirtatious comments to Plaintiff

10    Licona about his body, appearance, or sex appeal;

11    m.    Threatening retaliation, including termination, for resisting Defendant

12    Flores' sexual harassment, stating "the door is wide"; and

13    n.    Assigning Plaintiff Licona more difficult or unpleasant tasks in

14    retaliation for turning down Defendant Flores' sexual advances and

15    his requests to perform oral sex on Plaintiff Licona.

16    56.    Between on or about December 10, 2017 and on or about June 16, 2019,

17    Plaintiff Licona witnessed ongoing unwelcome sexual conduct by Defendant

18    Flores directed at other male workers at or near Mensonides Dairy in Mabton,

19    Washington.  This unwelcome conduct included but was not limited to:

20    a.    Touching and caressing their backs, necks, shoulders, and

21    pectorals/chest in a sexually provocative manner, numerous times;

b.   Massaging their shoulders and neck in a sexually provocative manner, numerous times;

c.   Rubbing their backs and buttocks in a sexually provocative manner, numerous times;

d.   Making obscene gestures indicating that certain workers had attractive buttocks and simulating oral sex;

e.   Offering to waive or remove written discipline in exchange for allowing Defendant Flores to perform oral sex on them; and

f.   Threatening retaliation for resisting Defendant Flores' sexual harassment, stating "the door is wide".

57.   Between on or about December 10, 2017 and on or about June 16, 2019, Defendants subjected Plaintiff Licona to retaliation at or near Mensonides Dairy in Mabton, Washington.  Upon information and belief, such retaliation was related to Plaintiff Licona's resistance to Defendant Flores' harassment and Plaintiff Licona's refusal to allow Defendant Flores to perform oral sex on him or otherwise engage in an intimate a relationship with Defendant Flores, and later, for Plaintiff Licona's participation in filing Charges with the EEOC and participating in that EEOC investigation.  The retaliation included but was not limited to:

a.   Issuing unwarranted written discipline;

b.   Imposing new and additional administrative requirements after numerous years of employment;

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

1   c. Denying requests to use accrued Paid Time Off;

2   d. Suspending Plaintiff Licona without pay;

3   e. Terminating Plaintiff Licona's employment based on unwarranted

4     written discipline/warnings; and

5   f. Terminating Plaintiff Licona's employment without compensation for

6     accrued but unused Paid Time Off.

7 58. Plaintiff Mendoza worked for Defendant Mensonides Dairy from in or

8 around May 2016 through in or around April 2019, when Defendant Flores

9 informed him he had been fired.

10 59. Between on or about December 10, 2017 and on or about April of 2019,

11 Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected

12 Plaintiff Mendoza to ongoing unwelcome sexual conduct at or near Mensonides

13 Dairy in Mabton, Washington.  This unwelcome conduct included but was not

14 limited to:

15   a. Winking and blowing kisses at Plaintiff Mendoza in a sexually

16     provocative manner, numerous times;

17   b. Using sexually charged terms of endearment to refer to Plaintiff

18     Mendoza, such as "papacito" (daddy), "guapo" (handsome), and

19     "papi" (daddy), in a sexually provocative manner, numerous times;

20   c. While supervising individual urine-based drug testing, suggestively

21     and insistently requesting to see Plaintiff Mendoza's penis;

**MARTINEZ AGUILASOCHO & LYNCH**
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

1    d.    Spying on Plaintiff Mendoza, or trying to see Plaintiff Mendoza's

2         penis, as Plaintiff Mendoza urinated;

3    e.    Reaching into Plaintiff Mendoza's overalls to grab Plaintiff Mendoza

4         by the testicles, at times in front of other workers, but especially when

5         alone and secluded from others;

6    f.    Grabbing Plaintiff Mendoza's crotch in a sexually provocative

7         manner;

8    g.    Fondling, caressing, and groping Plaintiff Mendoza's legs, upper

9         thighs, and genitalia in a sexually provocative manner, numerous

10        times;

11   h.    Making obscene gestures, using his lips and tongue in a sexually

12        provocative manner, and simulating oral sex, numerous times;

13   i.    Making unwanted sexually charged comments to Plaintiff Mendoza

14        about Plaintiff Mendoza's masculinity, body, and appearance;

15   j.    Making unwanted requests for anal sex to Plaintiff Mendoza and for

16        Plaintiff Mendoza to "at least" allow Defendant Flores to perform oral

17        sex on him;

18   k.    Suggestively touching/caressing Plaintiff Mendoza's back, waistline,

19        hips, and buttocks;

20   l.    Making sexually provocative comments or "jokes" to Plaintiff

21        Mendoza regarding another worker who Defendant Flores found

unattractive, comparing the worker to a pimp and Defendant Flores
himself to a prostitute;

m.    Threatening to reduce Plaintiff Mendoza's wages and prevent future
raises unless Plaintiff Mendoza allowed Defendant Flores to perform
oral sex on Plaintiff Mendoza; and

n.    Threatening workers including Plaintiff Mendoza, not to complain
about Defendant Flores' harassment, frequently stating "if you don't
like it, there's the door".

60.    Between on or about December 10, 2017 and early to mid-April of 2019,
Plaintiff Mendoza witnessed ongoing unwelcome sexual conduct by Defendant
Flores directed at other male workers at or near Mensonides Dairy in Mabton,
Washington.  This unwelcome conduct included but was not limited to:

a.    Winking and blowing kisses in a sexually provocative manner at male
workers in a sexually provocative manner, numerous times;

b.    Grabbing at, groping, and fondling the penis of a male worker,
numerous times;

c.    Spying on workers as they urinated;

d.    Suggestively touching and caressing male workers in a sexually
provocative manner as they clocked in and out, numerous times; and

e.    Suggestively massaging workers' shoulders, necks, and backs in a
sexually provocative manner, numerous times.

61.    In or around March or April 2019, Defendant Mensonides Dairy, through

Defendant Flores, subjected Plaintiff Mendoza to retaliation at or near Mensonides

Dairy in Mabton, Washington.  Based upon information and belief, this retaliation

was due to Plaintiff Mendoza's resistance to Defendant Flores' harassment and his

refusal to allow Defendant Flores to perform oral sex on him or otherwise engage

in an intimate relationship with Defendant Flores.   The retaliation included but

was not limited to:

        a.    Denying or preventing Plaintiff Mendoza from receiving any raises;

        b.    Assigning Plaintiff Mendoza to difficult jobs against medical advice;

              and

        c.    Denying accommodation of duties for Plaintiff Mendoza's workplace

              injury, further exacerbating his injury.

62.    Plaintiff Moreno worked for Defendant Mensonides Dairy from in or around

October 2009 through in or around October or November 2018, when he was

briefly fired by Defendant Flores before being rehired within a few days by Auke

Bruinsma, and continuing to work from the date of his rehire in late 2018 through

in or around October 2019.

63.    Between on or about December 10, 2017 and on or about May 15, 2019,

Defendant Mensonides Dairy, through the conduct of Defendant Flores, subjected

Plaintiff Moreno to ongoing unwelcome sexual conduct at or near Mensonides

Dairy in Mabton, Washington.  This unwelcome conduct included but was not

1 │ limited to:

2 │     a.      Touching, caressing, or massaging Plaintiff Moreno's upper body,

3 │             including back, neck, shoulders, pectorals/chest, and nipples, in a

4 │             sexually provocative manner, numerous times;

5 │     b.      Grabbing and caressing Plaintiff Moreno's hand in a sexually

6 │             provocative manner;

7 │     c.      Fondling and groping, and attempting to fondle and grope, Plaintiff

8 │             Moreno's legs, upper thighs, and genitals in a sexually provocative

9 │             manner, numerous times;

10 │     d.      Making lewd and obscene comments to Plaintiff Moreno, suggesting

11 │             that Plaintiff Moreno should have sex with Defendant Flores;

12 │     e.      Based upon information and belief, telling other workers that

13 │             Defendant Flores wanted to be with Plaintiff Moreno, numerous

14 │             times;

15 │     f.      Making obscene gestures and simulating oral sex;

16 │     g.      Making unwanted offers of sex to Plaintiff Moreno;

17 │     h.      Offering Plaintiff Moreno money or sex with women coworkers to

18 │             have sex or an intimate a relationship with Defendant Flores;

19 │     i.      Offering Plaintiff Moreno money or sex with women coworkers if

20 │             Plaintiff Moreno would facilitate or convince a certain male worker to

21 │             have sex with Defendant Flores;

j.     Threatening retaliation against anyone who resisted the sexual

harassment, including Plaintiff Moreno, by telling them "the door is

wide" and that they were easily replaceable;

l.     Frequently using an unwanted, sexually provocative and flirtatious

nickname for Plaintiff Moreno, calling him "Angelito" (little angel),

often in a singsong voice, instead of using Plaintiff Moreno's given

name, Genaro;

m.    Based on information and belief, using an unwanted, sexually

provocative and flirtatious nickname for Plaintiff Moreno, referring to

him as "Angelito" (little angel) in front of other workers, instead of

using Plaintiff Moreno's given name, Genaro, such that other workers

believed Plaintiff Moreno's name was actually "Angelito";

n.     Based upon information and belief, telling workers that his position

and friendship with Krystin Mensonides meant he could promote and

benefit workers who submitted to his sexual advances or penalize

those who did not in regards to their terms of employment; and

o.     Telling other workers, in the earshot of Plaintiff Moreno, that Plaintiff

Moreno would never get a raise because Plaintiff Moreno never let

Defendant Flores "touch him".

64.     Between on or about December 10, 2017 and on or about May 15, 2019,

Plaintiff Moreno never received a pay raise.

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

65.    Between on or about December 10, 2017 and on or about May 15, 2019, Plaintiff Moreno complained to supervisor Auke Bruinsma about sexual conduct by Defendant Flores, including when Defendant Flores grabbed Plaintiff Moreno's genitals.

66.    Between on or about December 10, 2017 and on or about May 15, 2019, Plaintiff Moreno witnessed ongoing unwelcome sexual conduct by Defendant Flores directed at other male workers at or near Mensonides Dairy in Mabton, Washington.  This unwelcome conduct by Defendant Flores included but was not limited to:

a.    Firing a worker for introducing a woman/dating prospect to a male worker with whom Defendant Flores had sought to have (or had had) an intimate relationship;

b.    Offering numerous workers wage increases or improved work positions in exchange for sex or to intimate a relationship with Defendant Flores;

c.    Kissing a male subordinate worker at work; and

d.    Telling Plaintiff Moreno that certain workers who had turned down Defendant Flores' advances would therefore never get a raise.

67.    In or around late fall of 2018, Defendant Mensonides Dairy, subjected Plaintiff Moreno to retaliation, through Defendant Flores, who fired Plaintiff Moreno.  Upon information and belief, the termination was due to Plaintiff

1  Moreno's resistance to Defendant Flores' sexual harassment and advances.

2  68.    Shortly after discharge by Defendants in or around late fall of 2018,

3  supervisor Auke Bruinsma called Plaintiff Moreno to return to work.  Plaintiff

4  Moreno told Mr. Bruinsma that he would only return to employment if Mr.

5  Bruinsma would ensure that Plaintiff Moreno did not have to work or interact with

6  Defendant Flores, who he informed Mr. Bruinsma, was sexually harassing him.

7  After receiving assurances from Mr. Bruinsma that he would no longer work near

8  or interact with Defendant Flores, Plaintiff Moreno returned to work.  However, in

9  his position as General Manager, Defendant Flores still had opportunities to and

10  did interact with Plaintiff Moreno, and Defendant Flores used those opportunities

11  to continue the aforementioned sexual harassment.

12  69.    On or about May 15, 2019, Plaintiff Moreno suffered constructive discharge

13  by Defendants, as he was forced to find alternative employment in order to escape

14  the sexual harassment by Defendant Flores.

15  70.    Plaintiff Ramirez worked for Defendant Mensonides Dairy from in or

16  around 2008 through in or around March or April 2019.

17  71.    Between on or about December 10, 2017 and in or around March or April of

18  2019, Defendant Mensonides Dairy, through the conduct of Defendant Flores,

19  subjected Plaintiff Ramirez to ongoing unwelcome sexual conduct at or near

20  Mensonides Dairy in Mabton, Washington. This unwelcome conduct included but

21  was not limited to:

1      a.    Getting uncomfortably close to Plaintiff Ramirez when interacting at

2             work, numerous times;

3      b.    Engaging in unwanted touching of Plaintiff Ramirez, including

4             suggestively touching and caressing Plaintiff Ramirez's shoulders and

5             upper back area, numerous times;

6      c.    Engaging in unwanted flirtation, numerous times;

7      d.    Based upon information and belief, making unwanted comments and

8             insinuating to other workers that he had a relationship with Plaintiff

9             Ramirez, including referring to Plaintiff Ramirez's sister as "cuñada"

10           (sister-in-law);

11     e.    Based upon information and belief, insinuating in conversation to

12           workers that those who had intimate relationships with Defendant

13           Flores would be protected and receive benefits;

14     f.    Based upon information and belief, asking other male workers to

15           facilitate an intimate relationship between Plaintiff Ramirez and

16           Defendant Flores by offering them money or benefits, including

17           sexual favors, numerous times;

18     g.    Threatening Plaintiff Ramirez and other workers resistant to

19           Defendant Flores' sexual harassment with termination, saying "if you

20           don't like it, the door is wide";

21     h.    Making sexually provocative and flirtatious comments to Plaintiff

Ramirez about his body and physical appearance; and

i.      Based upon information and belief, making sexually provocative and flirtatious comments about Plaintiff Ramirez's body and physical appearance to other workers.

72.     Between on or about December 10, 2017 and in or around March or April of 2019, Plaintiff Ramirez witnessed ongoing unwelcome sexual conduct directed at other male workers by Defendant Flores at or near Mensonides Dairy in Mabton, Washington.  This unwelcome conduct by Defendant Flores included but was not limited to:

a.      Engaging in unwanted touching of other male workers, including suggestively touching and caressing their backs, necks, shoulders, and pectorals/chest, and suggestively massaging their shoulders and neck, numerous times;

b.      Making obscene gestures and simulating oral sex; and

c.      Calling other male workers by unwelcome and sexually suggestive nicknames or sexually charged terms of endearment, including "guapo" (handsome), "Angelito" (little angel), and "mijo" (sweetie/hun).

73.     The offensive and unwelcome sexual conduct of Defendants that Plaintiffs experienced created a hostile work environment and adversely affected the terms and conditions of employment for each Plaintiff.

74.     Defendant Mensonides Dairy knew or should have known of the harassing conduct of Defendant Flores.

75.     Defendant Mensonides Dairy had ineffective policies or procedures for reporting and addressing sexual harassment and discrimination perpetrated by a management employee, such as Defendant Flores.

76.     Defendant Mensonides Dairy failed to take prompt and adequate corrective action to prevent or remedy the hostile work environment caused by offensive and unwelcome sexual conduct of Defendant Flores.

77.     Based upon information and belief, Defendant Mensonides Dairy demoted Defendant Flores from General Manager and removed Defendant Flores' responsibility to handle administrative and human resources matters, only after Plaintiffs submitted their Charges of Discrimination with the EEOC. Based upon information and belief, Defendant Mensonides Dairy continues to employee Defendant Flores in a position with some supervisory authority.

78.     Defendant Flores' actions were intentional, willful, and taken in reckless disregard for the rights of others, and included engaging in unwanted sexual touching, groping, sexual battery, sexual assault, extortionate demands for sexual favors or intimate relationships, quid pro quo sexual harassment, offers of money or other benefits in exchange for sex or an intimate relationship, and threats of retaliation against those who refused, resisted, or complained about his sexual harassment.

79.    The failure of Defendant Mensonides Dairy's management employee Auke

Bruinsma to investigate or take adequate corrective action for sexual harassment by

Defendant Flores as reported by Plaintiff Moreno, was intentional, willful, and

taken in reckless disregard for the rights of others.

80.    Defendant Mensonides Dairy's failure to investigate or take corrective action

for reported sexual harassment by Defendant Flores was intentional, willful, and

taken in reckless disregard for the rights of others.

81.    Plaintiffs suffered damages, including monetary and psychological damages,

as a result of Defendants' actions or omissions.

## VI.    STATEMENT OF CLAIMS

### A. Sexual Harassment in Violation of Title VII

82.    Plaintiffs reallege and incorporate by reference all allegations set forth in

preceding paragraphs as if set forth herein.

83.    In or around month of year through month of year, Defendants discriminated

against Plaintiffs in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-

2(a), by subjecting each Plaintiff to a hostile work environment based on their sex,

including by subjecting Plaintiffs to the acts of harassment, assault and sexual

violence identified above.

84.    The effect of Defendants' practices complained of above has been to deprive

Plaintiffs of equal employment opportunities.

85.    The unlawful employment practices complained of in paragraphs 37-80 were

1    intentional.

2    86.    The unlawful employment practices complained of in paragraphs 37-80 were

3    done with malice or with reckless indifference to the federally protected rights of

4    Plaintiffs.

5    **B. <u>Retaliation in Violation of Title VII</u>**

6    87.    Plaintiffs reallege and incorporate by reference all allegations set forth in

7    preceding paragraphs as if set forth herein.

8    88.    Plaintiffs engaged in conduct protected by Title VII when they opposed

9    unlawful and discriminatory employment practices by rejecting Defendant Flores'

10    sexual advances and complained to Defendant Mensonides Dairy's management

11    employees about workplace sexual harassment.

12    89.    From at least December 2017 to February 2020, Defendants violated section

13    704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Plaintiffs for

14    opposing unlawful and discriminatory employment practices, including but not

15    limited to as set forth above.

16    90.    The unlawful and discriminatory employment practices complained of above

17    were intentional.

18    91.    The unlawful and discriminatory employment practices complained of above

19    were done with malice or with reckless indifference to the federally protected

20    rights of Plaintiffs.

21    92.    With regards to Plaintiff Herrera, these unlawful employment practices

1  complained of in paragraph 53 above are ongoing.

2  ### C. <u>Constructive Discharge in Violation of Title VII</u>

3  93.    Plaintiffs reallege and incorporate by reference all allegations set forth in

4  preceding paragraphs as if set forth herein.

5  94.    Defendants discriminated against and constructively discharged Plaintiffs

6  Ceja, Gallegos and Moreno in violation of section 703(a) of Title VII, 42 U.S.C. §

7  2000e-2(a), by subjecting them to conditions so intolerable, based on unwanted

8  sexual touching and harassment and retaliation for complaining about or protesting

9  that conduct such that they were compelled to quit their job.

10  95.    The effect of Defendants' practices complained of above has been to deprive

11  Plaintiffs of equal employment opportunities.

12  96.    The unlawful and discriminatory employment practices complained of above

13  were intentional.

14  97.    The unlawful and discriminatory employment practices complained of in

15  above were done with malice or with reckless indifference to the federally

16  protected rights of Plaintiffs.

17  ### D. <u>Sexual Harassment in Violation of the WLAD</u>

18  98.    Plaintiffs reallege and incorporate by reference all allegations set forth in

19  preceding paragraphs as if set forth herein.

20  99.    In or around month of year through month of year, Defendants discriminated

21  against Plaintiffs in violation of WLAD, RCW 49.60.030 and 49.60.180, by

1  subjecting each Plaintiff to a hostile work environment based on their sex.

2  100.   As members of the male sex, Plaintiffs are members of a class protected

3  from discrimination and sexual harassment under the WLAD.

4  101.   The effect of Defendants' practices complained of above has been to deprive

5  Plaintiffs of equal employment opportunities based on sex.

6  102.   The unlawful employment practices complained of above were intentional.

7  103.   The unlawful employment practices complained of above were done with

8  malice or with reckless indifference to the protected rights of Plaintiffs.

9  104.   With regards to Plaintiff Herrera, the unlawful employment practice of

10  retaliation has been ongoing.

11  ## E. Retaliation in Violation of the WLAD

12  105.   Plaintiffs reallege and incorporate by reference all allegations set forth in

13  preceding paragraphs as if set forth herein.

14  106.   Plaintiffs engaged in conduct protected by WLAD when they opposed or

15  protested unlawful and discriminatory employment practices by rejecting

16  Defendant Flores' sexual advances and complained to Defendant Mensonides

17  Dairy's management employees about workplace sexual harassment.

18  107.   From at least month year to month year, Defendants violated WLAD, RCW

19  49.60.210, by retaliating against Plaintiffs for opposing or protesting unlawful and

20  discriminatory employment practices, including but not limited to as set forth

21  above.

108.    The unlawful and discriminatory employment practices complained of above were intentional.

109.    The unlawful and discriminatory employment practices complained of above were done with malice or with reckless indifference to the protected rights of Plaintiffs.

110.    With regards to Plaintiff Herrera, the unlawful employment practice of retaliation complained of above are ongoing.

### F.  Constructive Discharge in Violation of the WLAD

111.    Plaintiffs reallege and incorporate by reference all allegations set forth in preceding paragraphs as if set forth herein.

112.    Defendants discriminated against and constructively discharged Plaintiffs Ceja, Gallegos and Moreno in violation of WLAD, RCW 49.60.030 and 49.60.180, by subjecting them to conditions so intolerable based on unwanted sexual touching and harassment and retaliation for complaining about that conduct such that they were compelled to quit their job.

114.    The effect of Defendants' practices complained of above has been to deprive Plaintiffs of equal employment opportunities.

115.    The unlawful and discriminatory employment practices complained of above were intentional.

116.    The unlawful and discriminatory employment practices complained of above were done with malice or with reckless indifference to the protected rights of

Plaintiffs.

## VII.   REQUEST FOR RELIEF

117.   Plaintiffs respectfully ask this Court to grant them the following relief:

a.   Award Plaintiffs all damages to which they are entitled, including but not limited to: all special, general, compensatory, punitive, or other damages pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, the WLAD, RCW 49.60, section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and as otherwise authorized by law in amounts to be determined at trial;

b.   Award Plaintiffs compensation for past and future nonpecuniary losses resulting from violations of Title VII, 42 U.S.C. §§ 2000e *et seq.*, the WLAD, RCW 49.60, and otherwise as authorized by law, including but not limited to compensation for mental anguish and emotional and physical distress in amounts to be determined at trial;

c.   Order Defendants to pay each individual Plaintiff punitive damages for Defendants' intentional and/or malicious and/or reckless conduct in amounts to be determined at trial;

d.   Award Plaintiffs costs of this suit and attorneys' fees and costs pursuant to section 706(h) of Title VII, 42 U.S.C. § 2000e-5(k), the WLAD, RCW 49.60.030, and as otherwise authorized by law in amounts to be determined at trial;

e.   Award Plaintiffs damages for adverse tax consequences for tangible

MARTINEZ AGUILASOCHO & LYNCH
P.O. Box 1998, Bakersfield, CA 93303
Tel.: (661) 859-1174 | Fax.: (661) 840-6154

economic losses as a result of Defendants' violation of Title VII, 42 U.S.C. §§

2000e *et seq.*, and the WLAD, RCW 49.60, pursuant to *Chuong Van Pham v.*

*Seattle City Light*, 159 Wn.2d 527, 535, 151 P.3d 976, 980 (2007), in amounts

to be determined at trial;

   f.    Award Plaintiffs prejudgment interest on all liquidated sums;

   g.    Award Plaintiffs any other equitable relief as the Court may deem

appropriate for the unlawful employment practices complained of herein;

   h.    and Plaintiff Herrera respectfully asks this Court to grant him the

following additional relief:

   1.  a permanent injunction enjoining Defendants, their officers, successors,

       agents, assigns, and all persons in active concert or participation with it,

       from engaging in any employment practices which discriminate on the

       basis of sex and/or are in retaliation for the protected activities of

       employees pursuant to section 706(g) of Title VII, 42 U.S.C. § 2000e-

       5(g); and

   2.  Order Defendants to institute and carry out policies, practices, and

       programs which provide equal employment opportunities for all

       employees, and which eradicate the effects of its past and present

       unlawful employment practices.

///

///

1

## VIII.  <u>JURY DEMAND</u>

2

Plaintiffs request a jury trial on all questions of fact raised by this Complaint.

3

4

Dated this 22nd day of May, 2020.

5

6

By: _____

7

Charlotte Mikat-Stevens

8

MARTINEZ AGUILASOCHO & LYNCH

9

*Counsel for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21